**In The**

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

**NO. 09-24-00285-CV**
_____

**CE ACQUISITION, LLC, Appellant**

**V.**

**ON-SITE CONSTRUCTION, Appellee**

_____

**On Appeal from the 284th District Court
Montgomery County, Texas
Trial Cause No. 24-02-02408-CV**

_____

**MEMORANDUM OPINION**

On-Site Construction ("On-Site") sued CE Acquisition, LLC ("CEA") and Patriot Services Network LLC ("Patriot"), alleging that CEA and Patriot failed to pay On-Site for labor and materials On-Site provided in connection with the "build out" of the Café Express restaurant location. When CEA and Patriot failed to answer On-Site's suit, On-Site moved for and was granted a default judgment jointly and severally against CEA and Patriot for $226,018, plus interest and attorney's fees.

1

The trial court's judgment also permitted On-Site to foreclose on its Mechanic's and Materialmen's Lien to satisfy On-Site's judgment against CEA and Patriot.[1]

We reverse the trial court's default judgment and remand this case to the trial court for a new trial.

## BACKGROUND

In 2022, CEA contracted with Patriot regarding the "build out" of a Café Express restaurant in The Woodlands. On July 8, 2022, Patriot subcontracted with On-Site to supply the necessary materials and labor for the project. Although the project originally contemplated framing, drywall installation, flooring, ceiling, and trash removal, during the course of the project, the parties agreed to several change orders expanding the scope of the project to include plumbing, electrical work, roof and floor repairs, duct work, air-conditioning installation, structural support work, millwork installation, painting, and smoke detectors. The change orders described the additional work On-Site was to perform and the amount it was to be paid for the work.

On-Site later claimed that it performed work not reflected in the written change orders, and when On-Site and Patriot disagreed about the amount allegedly owed, On-Site looked to both Patriot and CEA for payment. On-Site demanded

---

[1] Patriot is not a party to this appeal.

arbitration pursuant to its contract with Patriot, then sued Patriot and CEA. We summarize the proceedings below.

February 6, 2024

On-Site filed its arbitration demand with the American Arbitration Association and served the demand on CEA through CEA's registered agent for service of process, Corporation Service Company d/b/a CSC-Lawyers Incorporating Service Company ("CSC").

On-Site's Demand for Arbitration alleged that, although some of the expanded scope of the Café Express project was accomplished through written change orders, other additional work was added orally. "Patriot constantly assured [On-Site] that it would be paid for all of its work, and that the remaining amounts above the initial contract amount would be reimbursed upon completion of the project. Patriot asked that [On-Site] perform this work in 'good-faith' while assuring that it would be paid for all the additional work it performed at Patriot's request."

On-Site alleged that Patriot paid On-Site $181,000 of the $504,918 owed.

On-Site alleged causes of action for breach of contract, quantum meruit, breach of fiduciary duty and breach of trust, unjust enrichment, and promissory estoppel, and sought damages, attorney's fees, interest, and lien foreclosure.

CEA's registered agent received On-Site's Arbitration Demand on February 9, 2024.

February 12, 2024

On-Site filed its petition.

On-Site's petition contained the same causes of action and underlying factual allegations as its Arbitration Demand.

On-Site's Petition was served on CEA through CEA's registered agent on March 1, 2024.

3

<u>May 22, 2024</u>

On-Site filed its Motion for Default Judgment, repeating many of the factual allegations included in its petition and stating that CEA's and Patriot's deadline to answer was March 25, 2024. On-Site further stated that neither CEA nor Patriot had answered and accordingly requested a judgment awarding it damages in the amount of $321,668, plus attorney's fees of $3,855.83, interest, court costs, and lien foreclosure.

On-Site served this motion on CEA through CEA's registered agent, CSC.

<u>May 24, 2024</u>

The trial court signed the order granting On-Site's requested default judgment. The order sets forth the following:

1. Plaintiff filed its Original Petition (the "Original Petition") against Defendants on February 12, 2024;

2. Defendant Patriot was served with citation and original petition through its registered agent, Registered Agent United States Corporation Agents Inc, 9900 Spectrum Drive, Austin, Texas 78717, on March 1, 2024, and the return of service was filed with this Court on March 5, 2024;

3. Defendant CEA was served with citation and original petition through its registered agent, Registered Agent Corporation Service Company, d/b/a CSC-Lawyers Incorporating Service Company, 211 E 7th Street Suite 620, Austin, Texas 78701, on March 1, 2024, and the return of service [was] filed with this Court on March 6, 2024;

4. Citation and proof of service on Defendants has been on file with the clerk for the required time under the Texas Rules of Civil Procedure, excluding the day of filing and today;

5. Defendants' deadline to file their answers to the Original Petition was March 25, 2024; and

4

6. Defendants have not filed an answer or any pleadings constituting an appearance in response to Plaintiff's Original Petition.

. . .

Therefore, it is ORDERED, ADJUDGED, and DECREED THAT:

1. Plaintiff's Motion for Default Judgment is GRANTED;

2. Default judgment is entered *for* Plaintiff ON-SITE CONSTRUCTION; it is, further

3. ORDERED, ADJUDGED, and DECREED THAT default judgment is entered *against* PATRIOT SERVICES NETWORK LLC and CE ACQUISITION, LLC, jointly and severally, in the amount of $226,018.00 for actual, liquidated damages, as established by the documents and pleadings on file with the Court; it is, further

4. ORDERED, ADJUDGED, and DECREED THAT that default judgment is entered against Defendants PATRIOT SERVICES NETWORK LLC and CE ACQUISITION, LLC jointly and severally, in the additional amount of $3,855.83, representing reasonable attorneys' fees, expenses, and fees as established by the documents and pleadings on file with the Court; it is, further

5. ORDERED, ADJUDGED, and DECREED THAT said judgment includes post-judgment interest at a rate as allowed by law, which is 8.50% as of the date of this Order, compounded annually, and all of Plaintiff's costs of court; it is, further

6. ORDERED that the Plaintiff's Mechanic's and Materialmen's Lien identified as Exhibit D to Plaintiff's Original Petition which is secured by the leasehold estate held by Café Express which is legally described by Exhibit D incorporated into this Order is foreclosed; that an Order of Sale shall issue to any Sheriff in the State of Texas, directing the sheriff to seize and sell the real property as under execution, in satisfaction of this judgment; and that, if the real property cannot be found or if the proceeds of the sale are insufficient to satisfy the judgment, the officer shall take the money,

or any balance remaining unpaid, out of any property of Defendants PATRIOT SERVICES NETWORK LLC and CE ACQUISITION, LLC, as in the case of ordinary executions.

7. All writs and processes for the enforcement and collection of this Judgment or the costs of court may issue as necessary.

<u>May 29, 2024</u>

CSC received the default judgment signed on May 24, 2024.

<u>June 17, 2024</u>

CEA filed its Motion for New Trial. This motion stated that CEA did not receive the citation and petition. Accordingly, CEA's failure to answer "was not intentional, it has a meritorious defense, and Plaintiff will not suffer prejudice by a new trial." Thus, according to CEA, it was proper to grant CEA the new trial it sought.

CEA's Motion for New Trial set out a meritorious defenses to On-Site's causes of action and supported its Motion for New Trial with affidavits and correspondence stating that not only had CEA not received the suit, but that CEA had paid Patriot for the work performed. In particular, CEA's motion denied "that it was aware of Plaintiff providing materials, labor, and improvements . . . under circumstances that would notify [CEA] it would be liable to Plaintiff." CEA further denied that it misapplied trust funds "knowingly, intentionally, and with intent to defraud," and refused to pay such funds to On-Site. Since CEA denied having received these funds from a lender, it denied On-Site's alleged misapplication of them and breach of duty to On-Site.

As to On-Site's unjust enrichment allegation, CEA denied that it was unjustly enriched and that it obtained "any benefits by fraud, duress, or undue advantage," and observed that On-Site "offer[ed] no specific allegations against [CEA] in this regard." In addition, CEA denied having made any promises to On-Site, since CEA contracted with Patriot, not On-Site.

6

CEA cited the short time frame between On-Site's default judgment and CEA's Motion for New Trial as showing the lack of any delay or injury to On-Site if the Motion for New Trial were granted.

CEA supported its motion with Dustin Pridmore's affidavit. In his affidavit, Pridmore stated that he was a representative of CEA and had investigated the non-receipt of On-Site's suit. According to Pridmore, CEA's registered agent, CSC, claimed to have sent CEA the citation and Original Petition via Federal Express, yet Federal Express "was unable to produce a signature evidencing [CEA]'s receipt of the package." Pridmore also inquired of CEA's front desk staff "and anyone else who could have received" the Federal Express delivery, and no one at CEA received the suit papers from CSC.

Pridmore also elaborated on the merits of On-Site's suit and CEA's defenses thereto, reciting the defenses set forth in the body of CEA's motion.

CEA's Motion for New Trial also included the June 17, 2024 affidavit of CEA's attorney. This affidavit pertains to Charles Tracy's capacity to sue and showed that CEA's attorney had seen On-Site's petition on or before June 17, 2024.

Also attached as an exhibit to CEA's Motion for New Trial was counsel's email exchange.

On Friday, June 7, 2024, CEA's attorney contacted On-Site's attorney, stating:

I represent CE Acquisition, LLC. My client received the Motion for Default Judgment last week, which upon further investigation has yielded that a default judgment was entered. My client did not receive the citation and the original petition, and we've spent the last few days confirming that. As a result, I plan to file a motion for new trial to vacate the judgment.

. . .

Can you please let me know if you will agree to vacating the judgment?

On Monday, June 10, 2024, On-Site's attorney replied:

A pleasure to meet you. I have reviewed the file as well, and it appears that we appropriately served CE Acquisitions through the registered agent with the Texas Secretary of State pursuant to the rules. I do not believe this is a valid ground by which to grant a new trial.

. . .

For these reasons, we are presently opposed to vacating the judgment.

July 17, 2024

At the hearing on CEA's Motion for New Trial, conducted on July 17, 2024, the parties made their respective arguments. CEA argued that (1) its failure to answer was not the result of conscious indifference; (2) it had a meritorious defense to On-Site's claims; and (3) On-Site would not suffer delay or prejudice if the Motion for New Trial were granted. In fact, CEA agreed to pay On-Site's attorney's fees if the motion were granted. Therefore, CEA contended, the trial court should grant the Motion for New Trial pursuant to applicable case law.

On-Site responded that since CEA had failed to respond to both On-Site's arbitration demand and suit, CEA had shown conscious indifference and CEA's failure to answer the suit therefore was not the result of mere inadvertence.

The trial court stated:

The Court finds that [CEA] engaged in conscious indifference related to the failure to answer; that there is no mistake, no accident, no excuse. It is actually a choice and a pattern of misconduct that the evidence has shown me.

The trial court also found that On-Site's attorney's fees of $5,740 were "customary in Montgomery County, reasonable, and necessary[.]"

July 25, 2024

The trial court afforded the parties an opportunity to negotiate a possible settlement, but when the parties' discussions proved fruitless, the trial court denied CEA's Motion for New Trial.

**ANALYSIS**

We review a trial court's denial of a motion for new trial under an abuse-of-discretion standard. *Dir., State Emps. Workers' Comp. Div. v. Evans*, 889 S.W.2d 266, 268 (Tex. 1994). A trial court's discretion is limited, however, and a trial court abuses its discretion when it acts without regard to guiding rules or principles. *See Strackbein v. Prewitt*, 671 S.W.2d 37, 38 (Tex. 1984). The applicable guiding rules and principles state that a trial court abuses its discretion in denying a motion for new trial if the motion for new trial and the evidence supporting it show that the defendant provided the trial court with sufficient evidence establishing three things: (1) the defendant's failure to appear was not intentional or the result of his conscious indifference, but instead resulted from an accident or mistake; (2) the defendant has a meritorious defense to the plaintiff's claims; and (3) granting the motion will not cause the plaintiff injury or undue delay. *See Craddock v. Sunshine Bus Lines, Inc.*, 133 S.W.2d 124, 126 (Tex. 1939). If the motion for new trial satisfies these requirements, the trial court must grant the motion. *Strackbein*, 671 S.W.2d at 39.

To establish the lack of conscious indifference, "'some excuse, although not necessarily a good one, will suffice to show that a defendant's failure to file an answer was not because the defendant did not care.'" *Sutherland v. Spencer*, 376 S.W.3d 752, 755 (Tex. 2012) (citation omitted). "[T]he element of conscious

9

indifference can be overcome by a reasonable explanation." *In re Sandoval*, 619 S.W.3d 716, 721 (Tex. 2021) (citation omitted).

To establish the existence of a meritorious defense, the defendant must produce evidence that, if believed, could cause a factfinder to reach a different result in another trial. *Ivy v. Carrell*, 407 S.W.2d 212, 214 (Tex. 1966). In *Dolgencorp of Tex., Inc. v. Lerma*, the Texas Supreme Court described the standard thus:

> Setting up a meritorious defense does not require proof "in the accepted sense." *Ivy*, 407 S.W.2d at 214. Rather, the motion [for new trial] sets up a meritorious defense if it alleges facts which in law would constitute a defense to the plaintiff's cause of action and is supported by affidavits or other evidence providing prima facie proof that the defendant has such a defense. *Id.*

288 S.W.3d 922, 928 (Tex. 2009).

A defendant may meet the third and final prong of *Craddock* by offering to reimburse the plaintiff for the costs it has incurred. *See United Beef Producers, Inc. v. Lookingbill*, 532 S.W.2d 958, 959 (Tex. 1976). Ultimately, the question is whether the evidence before the trial court shows that the trial court abused its discretion in denying the defendant's motion. *See Craddock*, 133 S.W.2d at 126.

Since 1939, *Craddock* has governed motions for new trial filed after the entry of a default judgment. *Id.* On-Site does not dispute this proposition but contends that CEA's failure to answer was due to conscious indifference. On-Site bases this argument on CEA's failure to respond to On-Site's arbitration demand and argues that CEA's lack of response to both the arbitration demand and the suit created "a

10

routine patte[r]n, practice, and behavior of intentionally ignoring legal actions filed against it by On-Site." The trial court apparently accepted this argument, in that it denied CEA's Motion for New Trial on its finding that CEA "engaged in conscious indifference . . . . It is actually a choice and a pattern of misconduct that the evidence has shown me."

We do not agree that the evidence before the trial court supports the trial court's determination that CEA was consciously indifferent to On-Site's suit. According to the rationale of *Strackbein*, when the "factual allegations in a movant's affidavits are not controverted, a conscious indifference question must be determined in the same manner as a claim of meritorious defense. It is sufficient that the movant's motion and affidavits set forth facts which, if true, would negate intentional or consciously indifferent conduct." 671 S.W.2d at 38-39 (citations omitted).

Here, as in *Strackbein*, the defendant was served but failed to answer. *See id.* at 38. After the trial court granted a default judgment in the plaintiff's favor, the defendant moved for a new trial, which the trial court denied. *Id.* The *Strackbein* defendant supported his motion for new trial with affidavits explaining that "due to a breakdown of communication," the petition and related paperwork were not sent to the defendant's attorney. *Id.* at 39. Affirming the Court of Appeals' reversal of the trial court's default judgment, the Texas Supreme Court stated:

In determining whether there was intentional disregard or conscious indifference we must look to the knowledge and acts of the defendant. The above affidavits constitute the only evidence before the trial court and there is no reasonable interpretation of those affidavits which would constitute evidence that [the defendant's] failure to answer the citation was a result of an intentional act or conscious indifference.

*Id.*

CEA, like the defendant in *Strackbein*, supported its Motion for New Trial with affidavits setting forth facts which, if true, negate intentional conduct or conscious indifference. Specifically, the affidavit of CEA's representative, Pridmore, states that regardless of service on CEA's registered agent, before May 30, 2024, CEA, itself, "had no knowledge of Plaintiff's lawsuit against CE Acquisition in Montgomery County." If true, CEA's lack of knowledge of On-Site's suit would establish that its failure to answer the suit was accidental and was not a product of intentional or consciously indifferent conduct. *See id.* at 38-39. CEA therefore satisfied the requirement that its failure to answer was not the result of intentional or consciously indifferent conduct, and the trial court abused its discretion in finding otherwise.

Although On-Site argues that the above standard applies only to uncontroverted allegations of inadvertence, and contends that On-Site controverted CEA's position, we observe that On-Site, as in *Strackbein*, filed no controverting affidavits rebutting CEA's claim of inadvertence. *See id.* at 38. On-Site's Motion for Default Judgment includes the sworn declarations of Charles Tracy ("Tracy") and

12

Thane Tyler Sponsel III ("Sponsel"), yet neither declaration controverts Pridmore's affidavit. Sponsel's declaration addresses On-Site's attorney's fees, and Tracy's declaration states that he is the owner of On-Site, explains the amounts allegedly due On-Site under its contract with Patriot, and states that "all the contents of the Motion [for default judgment] are true in substance and in fact, and that no material fact or circumstance within the affiant's knowledge has been omitted from the Motion." Tracy's statement does not negate CEA's position that its failure to answer On-Site's suit was due to an accident or mistake as opposed to conscious indifference.

Even if, as On-Site argues, CEA knew of On-Site's suit, such knowledge does not convert CEA's failure to answer from a mistake to intentional or consciously indifferent conduct, since case law does not hold that either service or knowledge of a suit is the deciding factor in differentiating between these states of mind. *See id.* In fact, *Craddock*, the seminal case on this issue, addressed a situation in which the defendant had been served, yet the court held that it was proper to set aside the default judgment entered against the defendant because his "failure to answer was on account of a mistake and was not intentional." 133 S.W.2d at 124, 126.

Turning to the third *Craddock* factor, that On-Site would experience no delay or prejudice by granting CEA's Motion for New Trial, we note that CEA filed its Motion for New Trial twenty-six days after On-Site moved for a default judgment, twenty-four days after the trial court signed On-Site's default judgment, and

13

approximately four months after On-Site filed suit. CEA also agreed to pay On-Site's attorney's fees incurred as of the time of the July 12, 2024 hearing. CEA accordingly satisfied the requirement of showing that On-Site would not have been delayed or harmed had the trial court granted CEA's motion. *See Strackbein*, 671 S.W.2d at 39 ("The third requirement of *Craddock* is that the motion for new trial be filed at a time when the granting thereof will occasion no delay or otherwise work an injury to the plaintiff.").

While neither On-Site nor the trial court addressed the second *Craddock* factor in any depth, we nonetheless note that as with the initial factor, CEA offered Pridmore's uncontroverted affidavit setting up meritorious defenses to On-Site's claims. *See Craddock*, 133 S.W.2d at 126. CEA thus has satisfied the second *Craddock* factor, also.

Since CEA met all three *Craddock* criteria for setting aside a default judgment, we conclude the trial court abused its discretion by denying CEA's Motion for New Trial. Accordingly, we sustain CEA's sole appellate issue.

## CONCLUSION

Having concluded the trial court abused its discretion by denying CEA's Motion for New Trial, we render the judgment that the trial court should have rendered: we reverse the trial court's judgment and grant CEA's motion for new

14

trial. We remand this case to the trial court for further proceedings consistent with this opinion. *See* Tex. R. App. P. 43.2(c).

REVERSED AND REMANDED.

JAY WRIGHT
Justice

Submitted on April 22, 2026
Opinion Delivered April 30, 2026

Before Golemon, C.J., Wright and Chambers, JJ.